**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **Yvette Palmer,**      **Plaintiff**       **v.**  **Enhanced Recovery Company LLC,**      **Defendant.** | **CIVIL ACTION**  **NO. 16-3559** |

**MEMORANDUM RE:
DEFENDANT'S MOTIONFOR SUMMARY JUDGMENT**

**Baylson, J.**                                                                                     **February __9__ , 2017**

## I.   Introduction

This case is an action filed under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Plaintiff Yvette Palmer asserts claims for damages for violation of the FDCPA, alleging that Defendant Enhanced Recovery Company ("Defendant" or "ERC") concealed its identity as a debt collector while attempting to collect debt and to obtain information to collect debt. Defendant argues that Plaintiff's claims are precluded by a settlement agreement resolving a prior lawsuit between the parties, and moves for summary judgment on that basis. For the reasons outlined below, Defendant's Motion for Summary Judgment is GRANTED.

## II.   Procedural Background

Plaintiff first filed a FDCPA lawsuit in this district against ERC in February 2016, in a case captioned <u>Palmer v. Enhanced Recovery Company LLC</u>, Civil Action No. 16-757-BMS ("February 2016 Lawsuit"). Pursuant to a settlement agreement between the parties, the February 2016 Lawsuit was voluntarily dismissed on May 9, 2016.

Plaintiff filed her complaint in this case less than two months later, on June 30, 2016. See ECF 3. In answering Plaintiff's Complaint, Defendant asserted an affirmative defense based on the settlement agreement reached in the February 2016 Lawsuit (the "Settlement Agreement"). See ECF 8. Then, on October 11, 2016, Defendant filed an early Motion for Summary Judgment arguing that Plaintiff's current claims are precluded by the Settlement Agreement. See ECF 11. Almost simultaneously, Plaintiff filed a Motion to Strike Defendant's affirmative defense based on the Settlement Agreement. See ECF 14.

On October 25, 2016, Plaintiff responded to Defendant's Motion for Summary Judgment (ECF 16) and Defendant responded to Plaintiff's Motion to Strike (ECF 15). Defendant filed a reply in support of its Motion for Summary Judgment on November 1, 2016, and attached a string of e-mails that were exchanged between Plaintiff's attorney and an ERC representative during the course of settlement negotiations of the February 2016 lawsuit. See ECF 20. Given that these e-mails were attached to Defendant's Reply Brief, this Court ordered Plaintiff to file a sur-reply brief addressing the legal impact, if any, of the e-mail exchange. See ECF 22. Plaintiff filed the ordered sur-reply on January 2, 2017. See ECF 23.

### III. Factual Background

ERC is a debt collection company, and was referred Plaintiff's delinquent Sprint Account for collection. See ECF 13 (Defendant's Statement of Undisputed Material Facts) at ¶ 1; ECF 16 (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts) at ¶ 1. On October 28, 2015, Defendant sent correspondence to Plaintiff in an attempt to collect the amount that was owed on Plaintiff's delinquent account. See ECF 13 at ¶ 3; ECF 16 at ¶ 3. On October 30, 2015, an ERC employee spoke with Plaintiff via telephone, and a recording of the telephone call is part of the record as an exhibit to ECF 16. See ECF 13 at ¶ 4; ECF 16 at ¶ 4.

On February 19, 2016, Plaintiff filed a Complaint against Defendant under the FDCPA ("February 2016 Complaint") which is attached at Exhibit 1B to ECF 13. See ECF 13 at ¶ 6; ECF 16 at ¶ 6. In the February 2016 Complaint, Plaintiff alleged, among other things, that Defendant was liable for "unjustified contacts" in violation of the FDCPA. See ECF 13 at ¶ 7; ECF 16 at ¶ 7. The only contacts that Plaintiff specifically refers to in the February 2016 Complaint are written contacts. See February 2016 Complaint.

During settlement discussions regarding the February 2016 Lawsuit, Plaintiff's attorney, Mr. Filipovic received the recording of the October 30, 2015 phone call which is part of the record in this case. See ECF 20, Exhibit 1. Upon receiving the recording, Mr. Filipovic used it as leverage in the settlement discussions with ERC representative Rocky Landoll, and indicated that in absence of settlement, he would amend the February 2016 Complaint to include allegations regarding the October 20, 2015 phone call. Id. Shortly thereafter, Plaintiff and Defendant entered into the Settlement Agreement that resulted in the voluntary dismissal of the February 2016 lawsuit. See ECF 13 at ¶ 8; ECF 16 at ¶ 8.

In the Settlement Agreement, the Parties agreed as follows:

> "Plaintiff Yvette Palmer hereby releases and forever discharges Enhanced Recovery Company LLC d/b/a "ERC", their predecessors, successors, insurers, assigns, attorneys, employees, agents and representatives, and each of them from any and all claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees, liabilities, and indemnities of any nature whatsoever, **arising out of facts set forth in Plaintiff's complaint** filed against the Defendant in the Action No. 2:16-cv-00757-BMS."

See ECF 13 at ¶ 8; ECF 16 at ¶ 8.

The Parties further agreed that:

> "[The Settlement Agreement] may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any suit, action or other proceeding which may be instituted, prosecuted or attempted in breach of this Agreement."

3

See ECF 13 at ¶ 9; ECF 16 at ¶ 9.

On June 30, 2016, Plaintiff filed the instant FDCPA case under, alleging that on or about October 30, 2015, an employee of Defendant "called Plaintiff a via telephone directly, attempting by its own admission . . . to elicit information from the Plaintiff which it would use to collect consumer debt allegedly owed by Plaintiff." See ECF 13 at ¶ 12; ECF 16 at ¶ 12.

## IV. Legal Standard

Summary Judgment is appropriate if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. Summary judgment is appropriate if the non-moving party fails to rebut the motion by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## V. Discussion

### A. Overview of Parties' Arguments

Defendant moves for summary judgment, arguing that the present case is barred by the Settlement Agreement reached in the February 2016 Lawsuit. Plaintiff does not dispute the validity of the Settlement Agreement, but argues that the Settlement Agreement does not preclude her current claims. Pointing to the language in the Settlement Agreement, which precludes cases "arising out of facts set forth" in the February 2016 Complaint, Plaintiff argues that in the February 2016 Complaint, she did not "set forth" facts relating to the phone call that is now the subject of the current lawsuit. In essence, Plaintiff contends that her prior lawsuit was based on letters sent by defendant to collect debt from her, and this lawsuit is based on a phone call.

Defendant argues that this lawsuit arises out of the same facts as Plaintiff's lawsuit. Defendant points out that the language of the original complaint is broad, and should not be interpreted narrowly. Defendant argues that here, the phone call which is the subject of the current lawsuit is encompassed within the same FDCPA claim as the February 2016 Lawsuit because it is related to the same debt and was received at approximately the same time as the letters that were the subject of the February lawsuit. In support of this argument, Defendant points to case law which stands for the proposition that plaintiffs filing lawsuits under the FDCPA are not entitled to damages for each separate contact that allegedly violates the FDCPA.

Plaintiff responds that the phone call did not "relate" to the same debt as the letters, because Plaintiff's debt to Sprint PCS was never specifically mentioned during the phone call, and Plaintiff could not have known that the phone call was related to that debt. In reply, Defendant points to an e-mail exchange between a Representative of Defendant Enhanced Recovery Company and Plaintiff's lawyer (Mr. Filipovic) that took place during the settlement

5

discussions that led to the Settlement Agreement. In the discussions, Mr. Filipovic makes comments which indicate that he was aware that the call related to the Sprint PCS debt, and he uses the phone call as a bargaining chip to secure a more favorable settlement for Plaintiff.

Plaintiff does not dispute the authenticity of the e-mail exchange, but argues that this Court should not consider the exchange because the plain language of the Settlement Agreement is controlling and no extraneous evidence is needed. Further, Plaintiff argues that the application of Federal Rule of Evidence 408 precludes this Court from considering the e-mail exchange.

### B. Applicable Law

A federal court exercising diversity jurisdiction applies the choice of law rules of the forum state. Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994). However, jurisdiction here is based on Federal Question Jurisdiction, pursuant to the Fair Debt Collection Practices Act. 28 U.S.C. § 1331. Nevertheless, the result is the same, because the FDCPA does not pre-empt choice-of-law rules. Cf., Wheeler v. A & M Indust. Supply Co., No. CIV. A. 98-CV-3200, 1998 WL 754729, at *3 (E.D. Pa. Oct. 29, 1998).

Under Pennsylvania's choice-of-law rules, courts will generally honor the intent of the contracting parties and enforce negotiated choice of law provision as long as the chosen state has a substantial relationship to the parties or transaction, and the application of the law of the chosen state would not violate public policy. Id.; see also SKF USA Inc. v. Okkerse, 992 F. Supp. 2d 432, 438 (E.D. Pa. 2014). The Settlement Agreement's choice of law provision clearly states that the agreement shall be construed under Pennsylvania law, and no party raises any reason why Pennsylvania law should not apply. See Defendant's Memorandum of Law (ECF 11), Attachment 1, Exhibit C, ¶ 12.3.

This case turns on the interpretation of the Settlement Agreement. Settlement agreements are contracts, and basic contract principles apply to their interpretation. See Coltec Indus., Inc.

v. Hobgood, 280 F.3d 262, 269 (3d Cir. 2002).  Under Pennsylvania contract law, courts should "focus on the clear and unambiguous language of an agreement as manifestly expressed, rather than as, perhaps, silently intended."  See Hartig Drug Co. Inc. v. Senju Pharm. Co., 836 F.3d 261, 275 (3d Cir. 2016) (citing Amoco Oil Co. v. Snyder, 478 A.2d 795, 798 (Pa. 1984) (internal quotations omitted).  In the settlement agreement context, the Third Circuit has said that "the general rule for construction of releases is that the intention of the parties must govern, but this intention must be gathered from the language of the release."  Bowersox Truck Sales & Serv., Inc. v. Harco Nat'l Ins. Co., 209 F.3d 273, 279 (3d Cir. 2000).  That is, "a release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given."  Id.  That said, an individual who executes a settlement agreement cannot "subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle."  Melendez v. Horizon Cellular Tel. Co., 841 F. Supp. 687, 691 (E.D. Pa. 1994).

### C. Analysis

Defendant ERC is entitled to Summary Judgment because under a plain language reading of the Settlement Agreement, the instant lawsuit is precluded, and even if the Settlement Agreement were ambiguous, extraneous evidence shows that the intent of the parties was to preclude Plaintiff's current claims.

*1. The Plain Language of the Settlement Agreement Precludes the Instant Lawsuit*

Looking first at the plain language of the agreement, as is required, the key question is whether the current case "aris[es] out of facts set forth in Plaintiff's complaint filed against the Defendant in the Action No. 2:16-cv-00757-BMS."  See ECF 13 at ¶ 8; ECF 16 at ¶ 8.

The language used in Plaintiff's February 2016 Complaint is broad.  The specific instances of "contact" laid out in the complaint reference only the letter sent to Plaintiff's

7

address, but the language of the complaint is much broader than that, and discusses generally Defendant's attempt to collect the Sprint PCS debt. Plaintiff now again attempts to bring a claim based on an attempt (by the same defendant) to collect the same debt, anchored by a phone call that took place within two days of the letter described in the February Complaint.

In short, Plaintiff's February Complaint was based on an attempt by ERC to collect a Sprint PCS debt. Though the June Complaint alleges different *specific* facts than Plaintiff's February Complaint, the June Complaint is also based on an attempt by ERC to collect that same Sprint PCS debt. That is, the June Complaint arises out of the same set of facts as her February Complaint. Through operation of the plain language of the Settlement Agreement, Defendant is entitled to summary judgment.

A further factor that counsels in favor of this result is that the statutory language and recovery limit of the FDCPA indicates that plaintiffs must include all instances of alleged illegal contact under the FDCPA relating to the same debt in the same lawsuit. That is, the language of the FDCPA instructs courts to consider the "frequency and persistence of noncompliance by the debt collector" when awarding damages under the statute. See 15 U.S.C. § 1692k(b); Wright v. Fin. Serv. of Norwalk, Inc., 22 F.3d 647, 651 (6th Cir. 1994); see also Crossley v. Lieberman, 868 F.2d 566, 572 (3d Cir. 1989). This, coupled with the statutory recovery limit of $1,000 in damages, indicates that Congress intended for FDCPA plaintiffs to include all violations in one lawsuit, with the volume of violations influencing the amount of damages awarded. See Goodmann v. People's Bank, 209 F. App'x 111, 114 (3d Cir. 2006); see also Cohen v. Am. Credit Bureau, Inc., No. 10-cv-5112-WJM, 2012 WL 847429, at *10 (D.N.J. Mar. 13, 2012).

Said differently, Congress did not intend to allow for seriatim claims or double recovery against the same debt collector for actions taken prior to the first lawsuit regarding the same

debt. See Cohen, 2012 WL 847429 at *10. To allow a plaintiff to seek damages by successive lawsuits would eviscerate the statutory damages limit in the FDCPA and would run contrary to the goals of judicial efficiency. Id. In short, Plaintiff had a reasonable opportunity to litigate her claims, and in fact, has already recovered on her claims. Defendant is entitled to Summary Judgment.

*2. Extraneous Evidence Reveals that the Parties intended to Preclude this Lawsuit*

At best, Plaintiff could argue that the Settlement Agreement is ambiguous as to whether it is intended to include her current lawsuit. However, even if this were the case, Defendant would nevertheless be entitled to Summary Judgment, given the e-mail exchange between Mr. Filipovic on behalf of Plaintiff and Mr. Landoll on behalf of ERC during settlement negotiations. See ECF 20, Exhibit 1.

The e-mail exchange makes clear that the parties *intended* the October phone call to be part of the settlement. Even more than that, Plaintiff's attorney specifically and effectively used the content of the October 30 phone call as a bargaining chip to secure a favorable settlement for his client. Indeed, the e-mails suggest that the Defendant's willingness to pay more than doubled as a result of those discussions. Now, after benefitting from the October phone call during settlement negotiations and procuring a larger settlement amount than she might have otherwise, Plaintiff attempts to bring another lawsuit based on that same phone call. To allow this lawsuit to go forward would be contrary to the negotiated agreement of the Parties.

Plaintiff argues that this Court cannot consider the above-described e-mail exchange, because it is inadmissible evidence under Federal Rule of Evidence 408. This argument is misplaced. Federal Rule of Evidence 408 does not act as an absolute bar to the consideration of settlement negotiations. See Fed. R. Evid. 408. Rather, the rule precludes the use of settlement

negotiations for particular purposes – such as showing the amount of a claim, or to prove wrongdoing or liability. Id.

In this motion for summary judgment, Defendant asks this Court to enforce the terms of the Settlement Agreement. Here, the settlement negotiations are being presented as a way to ascertain the intent of the parties to the Agreement. The law is clear that settlement negotiations are admissible for this purpose. Westchester Specialty Ins. Servs., Inc. v. U.S. Fire Ins. Co., 119 F.3d 1505, 1512 (11th Cir. 1997); cf., West Palm Beach Hotel, LLC v. Atlanta Underground, LLC, 626 F. App'x 37, 43 (3d Cir. 2015).

Therefore, because allowing this lawsuit to proceed would be contrary to the objective intent of the Parties as manifested by the Settlement Agreement and the prior negotiations, Defendants are entitled to summary judgment. See Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 137 (3d Cir. 1993) (holding that the intention of the parties is not a genuine issue if no rational factfinder could conclude that there was a different intention).

## VI. Conclusion

Therefore, Defendant's Motion for Summary Judgment is GRANTED. An appropriate order follows.

O:\CIVIL 16\16-3559 Palmer v Enhanced Recovery\16cv3559 - MSJ Memorandum.docx